United States District Court
Southern District of Texas
**ENTERED**
April 21, 2021
Nathan Ochsner, Clerk

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**BROWNSVILLE DIVISION**

| | | |
|---|---|---|
| MIGUEL ESPARZA-SALAZAR, | § | |
| Movant | § | |
| | § | |
| v. | § | Civil Action No. 1:19-cv-212 |
| | § | (Criminal Action No. 1:17-cr-644-1) |
| UNITED STATES OF AMERICA, | § | |
| Respondent | § | |

**MAGISTRATE JUDGE'S**
**REPORT AND RECOMMENDATION**

The Court is in receipt of Miguel Esparza-Salazar's "Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody" (hereinafter, Esparza-Salazar's "Motion" or "§ 2255 Motion"), and supporting submissions. Dkt. Nos. 1, 2, 22. For the reasons provided below, it is recommended that the Court: (1) **DENY** the relief requested in Esparza-Salazar's Motion and supporting submissions; (2) **DIRECT** the Clerk of Court to **CLOSE** this case; and (3) **DECLINE** to issue a certificate of appealability.

## I. Jurisdiction

This Court has jurisdiction over Esparza-Salazar's § 2255 Motion pursuant to 28 U.S.C. § 1331 and § 2255.

## II. Background and Procedural History

On October 17, 2017, Esparza-Salazar entered a "cold" guilty plea, pleading guilty to being an alien unlawfully found in the United States after deportation in violation of 8

U.S.C. §§ 1326(a) and 1326(b)(1).[1]  *See United States of America v. Miguel Esparza-Salazar*, No. 1:17-cr-644-1, Dkt. No. 34 at 1.[2]  After the Court accepted Esparza-Salazar's guilty plea, but before sentencing, Esparza-Salazar entered into a plea agreement with the Government.  CR Dkt. No. 28.  On March 21, 2018, United States District Judge Rolando Olvera sentenced Perez to 84 months of imprisonment.  CR Dkt. No. 34 at 1-2.  Judgment was entered on April 13, 2018.  *Id.* at 1.  Esparza-Salazar appealed.  CR Dkt. No. 29 at 1.

On March 25, 2019, the Court of Appeals for the Fifth Circuit affirmed Esparza-Salazar's judgment.  CR Dkt. No. 43.  Esparza-Salazar filed a petition for certification with the United States Supreme Court, which the Supreme Court denied on October 7, 2019.  Dkt. No. 44 at 1.  On November 4, 2019, Esparza-Salazar filed his instant § 2255 Motion and accompanying "Memorandum in Law in Support of a § 2255 Motion" (hereinafter, "Memorandum in Support")  Dkt. Nos. 1 and 2.[3]  Liberally construed, his claims fall into three categories: (1) claims that the Court erred in sentencing him; (2) claims that the Court erred in failing to ensure that he understood his sentencing exposure and plea agreement; and, (3) claims that his counsel provided him with ineffective assistance.  *See* Dkt. No. 1 at 4-8; Dkt. No. 2 at 1-10; Dkt. No. 22 at 3-6.

---

[1] A defendant enters a cold guilty plea when he pleads guilty without a plea agreement.

[2] Hereinafter, Esparza-Salazar's criminal case docket entries ("CR Dkt. Nos.") will be referred to only by their docket entry numbers.  As noted in these entries, Esparza-Salazar has used the following aliases: Andres Casarez, Miguel Esparza, Miguel Salazar, Miguel Salayar-Esparza.  CR Dkt. No. 20 at 2.

[3] Esparza-Salazar states that he placed his § 2255 Motion in the prison mailing system on November 4, 2019.  Dkt. No. 1 at 12.  The Court will consider his Motion filed on that date.  *See generally Spotsville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998) (noting that, for statute of limitations purposes, a pro se prisoner's habeas application is filed on the day it is placed in the prison mailing system); *United States v. Young*, 966 F.2d 164, 165 (5th Cir. 1992) (applying the mailbox rule to pro se prisoner proceedings under 28 U.S.C. § 2255).

The Government filed a "Memorandum in Opposition to § 2255 Motion" (hereinafter, the Government's "Memorandum") on May 13, 2020.  Dkt. No. 13.  In response, Esparza-Salazar filed a "Motion in Opposition to the Government's Response" (hereinafter, Esparza-Salazar's "Response").  Dkt. No. 22.  The Government has not filed a reply.

### III.  Legal Standards

**A.  28 U.S.C. § 2255**.  Pursuant to 28 U.S.C. § 2255, a defendant may move to vacate, set aside or correct his sentence if: (1) the sentence was imposed in violation of the Constitution or the laws of the United States; (2) the district court was without jurisdiction to impose the sentence; (3) the sentence imposed was in excess of the maximum authorized by law; or, (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).  The nature of a § 2255 collateral challenge is extremely limited, being reserved for instances of constitutional or jurisdictional magnitude.  *United States v. Shaid*, 937 F.2d 228, 232 (5th Cir. 1991).  If an error is not of constitutional magnitude, the movant must show that the error could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  *United States v. Smith*, 32 F.3d 194, 196 (5th Cir. 1994).

**B.  Ineffective Assistance of Counsel.**  The "Sixth Amendment guarantees a[ll] defendant[s] the right to have counsel present at all 'critical' stages of the criminal proceedings" instituted against them.  *Missouri v. Frye*, 566 U.S. 134, 140 (2012) (citing *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009)).  Critical stages include not only trial, but also pretrial proceedings — including the plea-bargaining process.  *Lafler v. Cooper*, 566 U.S. 156, 162 (2012); *Padilla v. Kentucky*, 559 U.S. 356, 373 (2010); *Hill v. Lockhart*,

474 U.S. 52, 57 (1985). Even though sentencing does not concern the defendant's guilt or innocence, ineffective assistance of counsel during a sentencing hearing is also constitutionally impermissible. *Lafler v. Cooper*, 566 U.S. 156, 165. The constitutional standard for determining whether a criminal defendant has been denied effective assistance of counsel at any of the critical stages mentioned above was announced by the Supreme Court in *Strickland v. Washington*:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

*Strickland*, 466 U.S. 668, 687 (1984).

To demonstrate that his attorney's performance was constitutionally deficient, a convicted defendant must show that counsel's representation "fell below an objective standard of reasonableness." *See Williams v. Taylor*, 529 U.S. 362, 390-91 (2000); *Darden v. Wainwright*, 477 U.S. 168, 184 (1986); *Strickland v. Washington*, 466 U.S. at 687-88; *Lackey v. Johnson*, 116 F.3d 149, 152 (5th Cir. 1997); *Andrews v. Collins*, 21 F.3d 612, 621 (5th Cir. 1994). A convicted defendant carries the burden of proof and must overcome a strong presumption that the conduct of his trial counsel falls within a wide range of reasonable professional assistance. *See Strickland*, 466 U.S. at 687-91; *Jones v. Cain*, 227 F.3d 228, 230 (5th Cir. 2000); *Green v. Johnson*, 160 F.3d 1029, 1036 n.1 (5th Cir. 1998); *Burnett v. Collins*, 982 F.2d 922, 928 (5th Cir. 1993).

In reviewing counsel's performance, the Court must be "highly deferential," making every effort "to eliminate the distorting effects of hindsight," and must "indulge a

strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.  Any deficiencies in counsel's performance must be prejudicial to the defense in order to constitute ineffective assistance under the Constitution.  *Id.*  To establish that he sustained prejudice, the convicted defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Williams v. Taylor*, 529 U.S. 362, 391; *Strickland*, 466 U.S. at 694.

The prejudice prong of *Strickland* focuses on whether counsel's deficient performance rendered the result of the trial unreliable or the proceeding fundamentally unfair.  "Unreliability or unfairness does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." *Williams*, 529 U.S. at 393 n. 17; *Strickland*, 466 U.S. at 692.  Because a convicted defendant must satisfy both prongs of the *Strickland* test, a failure to establish either deficient performance or actual prejudice under that test will ordinarily make it unnecessary to examine the other prong.  *See Strickland*, 466 U.S. at 700; *Ransom v. Johnson*, 126 F.3d at 716, 721 (5th Cir. 1997); *United States v. Seyfert*, 67 F.3d 544, 547 (5th Cir. 1995).  Therefore, failure to establish that counsel's alleged performance fell below an objective standard of reasonableness renders moot the issue of prejudice.  *See United States v. Hoskins*, 910 F.2d 309, 311 (5th Cir. 1990).  It is also generally unnecessary to consider whether counsel's performance was deficient where there is an insufficient showing of prejudice.  *See Black v. Collins*, 962 F.2d 394, 401 (5th Cir. 1992); *Martin v. McCotter*, 796 F.2d 813, 821 (5th Cir. 1986).

## IV.  Discussion

Esparza-Salazar's Motion, Memorandum in Support, and Response are somewhat unclear.  As mentioned above, however, his claims fall into the following three categories: (1) claims that the Court erred in sentencing him; (2) claims that the Court erred in failing to ensure that he understood his sentencing exposure and plea agreement; and, (3) claims that his counsel provided him with ineffective assistance.  *See* Dkt. No. 1 at 4-8; Dkt. No. 2 at 1-10; Dkt. No. 22 at 3-6.  The Court will address all of Esparza-Salazar's claims, though not necessarily in the order presented.

**A.  Esparza-Salazar's claims that the Court erred in sentencing him**. Esparza-Salazar makes the following arguments in support of his claims that the Court erred in sentencing him:

1.  The Court erred in sentencing him under 8 U.S.C. § 1326(b)(1) and (2), rather than § 1326(a).  Sections 1326(b)(1) and (2) are unconstitutional on their face, and as applied to him.  Dkt. No. 1 at 8; Dkt. No. 2 at 7-10.  In sentencing him pursuant to § 1326(b), the Court ran afoul of the Supreme Court's opinion in *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000).  Dkt. No. 2 at 8-10.  In *Apprendi v. New Jersey*, the Supreme Court found that, when certain facts increase "the penalty for a crime beyond the prescribed statutory maximum[,]" then those facts "must be submitted to a jury, and proved beyond a reasonable doubt."  530 U.S. 466, 490 (2000).  The Court improperly used facts and prior convictions to increase his sentence under § 1326(b) that were not proven to a jury, admitted by him, or included in his indictment.  Dkt. No. 2 at 8-10.

2.  The facts used to increase his sentence included certain alleged prior deportations.  Dkt. No. 2 at 8, 10.  Three alleged prior convictions were also used to improperly increase his sentence.  Dkt. No. 22 at 3-5.

> [His] sentence was enhanced by the addition of "special offense
> characteristics" for three separate prior convictions.  One conviction was
> assessed as requiring a ten level enhancement based upon a prior felony
> which sustained a prison term of sixty months or more.  However the
> guidelines require the investigation as to whether the sentence was actually
> served and what the underlying offense actually was.  In this particular case
> Salazar only served a portion of that sentence which should have reduced
> the special assessment by at least two levels.

*Id*. at 4-5 (errors in original).

3.   The Court improperly used his prior offenses, including an offense with a suspended sentence, to increase his criminal history category.   As a result, his opportunities under of the United States Sentencing Guidelines (hereinafter, the "Guidelines," "Sentencing Guidelines" or "U.S.S.G.") § 5K3.1 were reduced.  *Id*. at 3-5. Although the Court sentenced him below the Guidelines, he still suffered prejudice because the Guidelines were miscalculated.  Dkt. No. 22 at 4.

**Analysis**.  The Court did not convict or sentence Esparza-Salazar pursuant to 8 U.S.C. § 1326(b)(2).  *See* CR Dkt. No. 20 at 5 ("Presentence Investigation Report"); CR. Dkt. No. 34 at 1 ("Judgment"); CR Dkt. No. 35 at 1 ("Statement of Reasons" adopting the Presentence Investigation Report "without change").  Instead, the Court convicted and sentenced him under 8 U.S.C. § 1326(a) and (b)(1).  *Id*.  Therefore, Esparza-Salazar's argument that the Court erred in sentencing him under § 1326(b)(2) fails because it is factually incorrect.

To the extent that Esparza-Salazar is asserting that the Court erred because § 1326(b)(1) is inapplicable to him, his claim fails because he was charged with, and pleaded guilty to, violating § 1326(b)(1).  *See* CR Dkt. No. 18 at 1 ("Amended Indictment"); CR Dkt. No. 39 at 38-42 (Transcript of "Rearraignment").  That is, his Amended Indictment charged him with violating § 1326(b)(1), and during his rearraignment he

pleaded guilty to facts which form the basis of a § 1326(b)(1) violation. *See* CR Dkt. No. 39 at 41-42 (containing Esparza-Salazar's admission that he was found illegally in the U.S. on September 1, 2017, after having been previously removed on July 21, 2017, after having been convicted of a felony on August 5, 2013); 8 U.S.C. § 1326(b)(1) (making it a crime, punishable up to 10 years of imprisonment, to reenter the U.S. after having been previously removed, subsequent to a conviction for a felony).

Esparza-Salazar additionally attacks the constitutionality of § 1326(b)(1) on its face, and as applied to him. Pursuant to 8 U.S.C. § 1326(a), a defendant who has entered the U.S. illegally faces a maximum sentence of two years in prison. 8 U.S.C. § 1326(a). However, if that defendant was previously removed from the U.S. after having been convicted of a felony, then § 1326(b)(1) applies and the statutory maximum period of imprisonment increases to 10 years. 8 U.S.C. § 1326(b)(1). Esparza-Salazar argues that, under *Apprendi v. New Jersey*, when certain facts increase a crime's penalty beyond the statutory maximum laid out in § 1326(a), then those facts must be proved beyond a reasonable doubt before a jury. Dkt. No. 1 at 8; Dkt. No. 2 at 8-10. He asserts that, in his case, prior convictions and certain other alleged facts were used to increase his sentence under § 1326(b)(1) that were not proven to a jury, admitted by him, or included in his indictment. Dkt. No. 2 at 8-10.

With respect to his alleged prior convictions, the Government points out, and Esparza-Salazar concedes, that his argument is foreclosed by the Supreme Court's opinion in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998). Dkt. No. 13 at 11-12.[4] In *Almendarez–Torres*, the Supreme Court held that, for the purpose of sentencing

---

[4] Esparza-Salazar states that he "realizes" that *Almendarez–Torres* forecloses his arguments. But, he claims that his sentencing enhancements should be found unconstitutional "if

enhancements, a prior conviction is not a fact that must be alleged in an indictment or found by a jury beyond a reasonable doubt.  523 U.S. 224, 239–47.  Fifth Circuit and Supreme Court decisions post-dating *Almendarez–Torres* have not disturbed this holding.  *See Apprendi v. New Jersey*, 530 U.S. 466, 490 ("*Other than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.") (emphasis added); *United States v. Wallace*, 759 F.3d 486, 497 (5th Cir. 2014) ("We recently acknowledged that the *Almendarez–Torres* exception survived *Alleyne*.") (citing *United States v. Akins*, 746 F.3d 590, 611 (5th Cir. 2014) and *Alleyne v. United States*, –– U.S. ––, 133 S.Ct. 2151, 2158 (2013)); *United States v. Mendoza-Cepeda*, 787 F. App'x 264 (5th Cir. 2019) ("[Movant] argues that his sentence is unconstitutional because it exceeds the maximum sentence of 18 U.S.C. § 1326(a) charged in the indictment. However, [his argument that a] sentencing enhancement under § 1326(b) must be alleged in the indictment and proved to a jury is foreclosed by *Almendarez-Torres*[.]").  Accordingly, there is no merit to Esparza-Salazar's claim that the Court violated his constitutional rights under *Apprendi* when it used his prior convictions under § 1326(b)(1) to increase his sentence.[5]

---

**Almendarez–Torres** is overruled[.]"  Dkt. No. 2 at 7-8 (emphasis in original).  *See also id*. at 8 ("Ultimately, Mr. Esparza realizes that unitil the Supreme Court overrules **Almendarz-Torres**, the relief sough is foreclosed.") (errors and emphasis in original).

[5]  As the Government points out (Dkt. No. 13 at p. 11, note 5), Esparza-Salazar's argument is also foreclosed because he raised it on appeal and the Fifth Circuit rejected it on the merits.  *See* CR Dkt. No 43 at 2 ("In *Almendarez-Torres* . . . the Supreme Court held that for purposes of a statutory sentencing enhancement, a prior conviction is not a fact that must be alleged in the indictment or found by a jury[.]  We have held that subsequent Supreme Court decisions did not overrule *Almendarez-Torres*.");  *United States v. Webster*, 392 F.3d 787, 791 (5th Cir. 2004) (finding that a claim "raised and rejected on direct appeal" could not be raised in a § 2255 motion on collateral review); *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986) ("It is settled in

Esparza-Salazar next makes the related claims that the Court violated his constitutional rights when it used other facts to increase his sentence under § 1326(b)(1). More specifically, he states that certain of his alleged prior deportations were used by the Court to increase his sentence.  Dkt. No. 2 at 8, 10.  He indicates that these deportations were not proven to a jury, admitted by him, or included in his indictment.  *Id.* at 8-10. Therefore, he contends that the Court's use of these alleged deportations violates his rights under *Apprendi.*  *Id.*  The Government acknowledges Esparza-Salazar's claim here,[6] but its response is lacking in two critical respects.

First, the Government incorrectly argues that Esparza-Salazar's claim is foreclosed by the Supreme Court's opinion in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998).  *See* Dkt. No. 13 at 11.  In *United States v. Rojas-Luna*, the Fifth Circuit held that the fact of a prior removal must either be admitted by the defendant or proven to a jury. 522 F.3d 502, 504–06 (5th Cir. 2008).  In reaching this holding, the Fifth Circuit explained that the Supreme Court had made it clear that it would "not countenance any expansion of *Almendarez-Torres*."  *Id.* at 505.  That is, the Supreme Court had made it clear that the fact of a prior conviction need not be proven to a jury, but all other facts must be proven to a jury or admitted by the defendant.  *Id.* at 506.  After discussing the Supreme Court's decisions on the subject, the Fifth Circuit opined as follows:

> [O]ne of the reasons the Supreme Court has countenanced the use of a prior conviction to enhance a sentence is that a prior conviction is the product of procedures that encompass the constitutional guarantees of fair notice, reasonable doubt, and a jury.  *Jones [v. United States],* 526 U.S. [227, 249, (1999)].  Removals, on the other hand, are not subject to the same

---

this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in § 2255 motions.").

6  *See* Dkt. No. 13 at 2 ("He claims that *facts and* convictions that were used to increase his sentence were not in the indictment, admitted by him, or found by a jury.") (emphasis added).

constitutional requirements. *See Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952) ("Deportation is not a criminal proceeding . . . No jury sits.  No judicial review is guaranteed by the Constitution."); *United States v. Benitez-Villafuerte*, 186 F.3d 651, 657 (5th Cir. 1999) ("A deportation hearing is a civil, not a criminal, action . . . As such, the full range of constitutional protections available to a defendant in a criminal case are not afforded an alien in a deportation proceeding.").  Consequently, while a court may use a prior conviction with the knowledge that the defendant was given multiple constitutional protections, the same cannot be said for prior removals.

> In sum, the Supreme Court has clearly indicated that *Almendarez-Torres* is limited to prior convictions and that any other fact used to increase a sentence beyond a statutory maximum must be proven to a jury.

*Id.* at 505-506.

*United States v. Rojas-Luna* remains binding precedent in this circuit.  *See United States v. Velasquez-Torrez*, 609 F.3d 743, 747–48 (5th Cir. 2010) (distinguishing *United States v. Rojas-Luna)*; *United States v. Ramirez*, 557 F.3d 200, 203–04 (5th Cir. 2009) (same); *United States v. Hernandez-Zavala*, 689 F. App'x 268, 272–73 (5th Cir. 2017) ("The fact of a prior removal, however, must be proven to a jury or admitted by the defendant as part of a guilty plea.  *Rojas-Luna*, 522 F.3d at 506 & n.2; s*ee also United States v. Pando-De Madrid*, 442 Fed.Appx. 119, 121 (5th Cir. 2011)") (unpublished).  The Government does not acknowledge the opinion or directly address Esparza-Salazar's argument that certain of his alleged prior deportations were improperly used by the Court to increase his sentence.

Second, the Government suggests, without qualification, that Esparza-Salazar's claim is foreclosed because it was raised and rejected on appeal. Dkt. No. 13 at 11, note 5 ("[A]ny claim that the district court erred in sentencing Esparza-Salazar because § 1326 is unconstitutional is foreclosed because he raised that same argument on appeal.").  This suggestion is problematic because it implies that the Fifth Circuit explicitly addressed and

rejected Esparza-Salazar's claim that certain of his alleged prior deportations were improperly used by the Court to increase his sentence.  Arguably, Esparza-Salazar raised this claim on appeal.  The appellant brief submitted by his counsel states:

> In the event that 8 U.S.C. § 1326(b)(1) and (2) are not found unconstitutional on their face, their application as enhancements to Mr. Esparza Salazar's case is also unconstitutional.  Mr. Esparza-Salazar notes that the indictment failed to allege that his *deportation* resulted after a conviction for an aggravated felony.  Furthermore, *the government never proved to the jury the existence of a prior deportation* for an aggravated felony.  Thus, even if § 1326(b)(1) and (2) are not found unconstitutional on their face, they are still unconstitutional as applied to the defendant-appellant, Mr. Esparza-Salazar.

*United States v. Esparza-Salazar*, Appellate Action No. 18-40283, Dkt. No. 20 at p. 14 (emphasis added).[7]  The Fifth Circuit's entire response to this claim is limited to the following statements:

> Esparza-Salazar argues that the district court improperly sentenced him to more than two years of imprisonment because the § 1326(b) statutory enhancement is unconstitutional, particularly where, as here, it was not pleaded in the indictment and proven beyond a reasonable doubt.  Esparza-Salazar correctly concedes that the issue is foreclosed by *Almendarez-Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998), but seeks to preserve the argument for possible Supreme Court review.
>
> . . . . In *Almendarez-Torres*, 523 U.S. at 239-47, 118 S.Ct. 1219, the Supreme Court held that for purposes of a statutory sentencing enhancement, a prior conviction is not a fact that must be alleged in the indictment or found by a jury beyond a reasonable doubt.  We have held that subsequent Supreme Court decisions did not overrule *Almendarez-Torres*.  *See United States v.*

---

[7] Stating that Esparza-Salazar's appellate counsel raised this claim on appeal is arguably accurate, but it also somewhat generous.  It appears that his counsel failed to notice that: (1) the Court had not convicted or sentenced Esparza-Salazar pursuant to § 1326(b)(2); and, (2) the Government had not alleged that Esparza-Salazar had a previous aggravated felony conviction.  Additionally, his counsel incorrectly stated that Esparza-Salazar's claim was foreclosed by *Almendarez-Torres v. United States.  See United States v. Esparza-Salazar,* Appellate Action No. 18-40283, Dkt. No. 20 at p. 14 ("Yet, as previously noted, Mr. Esparza-Salazar recognizes that the relief he seeks is presently foreclosed in this Court.").  As discussed below, however, regardless of how inartfully the claim was raised, the Fifth Circuit did not specifically address the claim, reject it, or state that it had been waived.

> *Wallace*, 759 F.3d 486, 497 (5th Cir. 2014); *United States v. Pineda-Arrellano*, 492 F.3d 624, 625-26 (5th Cir. 2007).
>
> Because Esparza-Salazar's sole argument on the merits is foreclosed, we AFFIRM the judgment of the district court.

*United States v. Esparza-Salazar*, 762 F. App'x 176, 177 (5th Cir.), *cert. denied*, 140 S. Ct. 264, 205 L. Ed. 2d 166 (2019). Thus, the Fifth Circuit did not specifically acknowledge Esparza-Salazar's claim, reject it, or state that it was waived by his counsel's incorrect concession regarding *Almendarez*-Torres. *Id*.

Still, whatever mistakes may be laid at the feet of the Fifth Circuit, the Government, or Esparza-Salazar's appellate counsel, Esparza-Salazar must show that the District Court used a prior deportation, or deportations, to increase his sentence beyond the prescribed statutory maximum in violation of *Apprendi*. To determine if he has made this showing, the Court must look at how Esparza-Salazar's sentence was calculated. In sentencing Esparza-Salazar, the Court adopted the Presentence Investigation Report ("PSR") prepared by the U.S. Probation Office "without change." CR Dkt. No. 35 at 1. The PSR used the 2016 Edition of the Guidelines to determine Esparza-Salazar's offense level. *See* CR Dkt. No. 20 at ¶ 14. Pursuant to those Guidelines:

1. The PSR assigned a base offense level of 8 points for Esparza-Salazar's violation of § 1326(a) and § 1326(b)(1). *Id*. at ¶ 15.

2. The PSR assigned a special offense level enhancement of 4 points under U.S.S.G. § 2L1.2(b)(1)(A) because he had committed his "instant offense" after sustaining two felony illegal reentry offenses on June 1, 2009, and August 5, 2013, respectively. *Id*. at ¶ 16.

3. The PSR assigned a special offense level enhancement of 10 points under U.S.S.G. § 2L1.2(b)(2)(A) because: (a) prior to his first removal on August 11, 2004, he was convicted of controlled substance felony on December 3, 2001; and, (b) the sentence imposed for that felony was five years or more. *Id*. at ¶ 17.

4. The PSR assigned a special offense level enhancement of 6 points under U.S.S.G. § 2L1.2(b)(3)(C) because: (a) after his first removal on August 11, 2004, he was convicted of another controlled substance felony on or about April 3, 2007; and, (b) he was sentenced to "24 months of custody, to serve 16 months and remainder of [the] sentence suspended." *Id.* at ¶ 18.

5. The PSR deducted 3 points from his total offense level for acceptance of responsibility. *Id.* at ¶ 24.

6. The PSR assessed a "total offense level" of 25, a criminal history score of 15, and a criminal history category of VI. *Id.* at ¶¶ 25, 32, 82.

7. Based upon a total offense level of 25 and a criminal history category of VI, the PSR found that "the guideline range for imprisonment" was 110 to 137 months pursuant to "Zone D of the Sentencing Table, U.S.S.G. Chapter 5, Part A." *Id.* at ¶ 82.   However, pursuant to U.S.S.G. § 5G1.1(c)(1), the maximum Guidelines imprisonment range was limited to "the statutorily authorized maximum term of 120 months of imprisonment." *Id.*

Esparza-Salazar states that certain of his alleged prior deportations were improperly used by the Court to increase his sentence, but he does not specify which deportations were used.   Dkt. No. 2 at 8, 10.  It is clear from reviewing the PSR that the Court used his first deportation on August 11, 2004, to add 16 points to his total offense level.   *See* CR Dkt. No. 20 at ¶ 17-18.  Specifically, in adopting the PSR without change, the Court adopted the special offense level enhancements contained in paragraphs 17 and 18 of the PSR.  Paragraph 17 assigned a special offense level enhancement of 10 points under U.S.S.G. § 2L1.2(b)(2)(A) because: (1) *prior to Esparza-Salazar's first removal on August 11, 2004*, he was convicted of controlled substance felony on December 3, 2001; and, (2) the sentence imposed for that felony was five years or more. *Id.* at ¶ 17 (emphasis added).  Paragraph 18 assigned a special offense level enhancement of 6 points under U.S.S.G. § 2L1.2(b)(3)(C) because: (1) *after his first removal on August 11, 2004*, he was convicted of another controlled substance felony on or about April 3, 2007; and, (2) he

was sentenced to "24 months of custody, to serve 16 months and remainder of [the] sentence suspended." *Id*. at ¶ 18 (emphasis added).

Esparza-Salazar's alleged August 11, 2004 deportation was not: (1) proven to a jury; (2) admitted by Esparza-Salazar during his rearraignment; or, (3) admitted by Esparza-Salazar in his plea agreement. *See* CR Dkt. Nos. 28 and 39. Nevertheless, the Court's use of Esparza-Salazar's alleged August 11, 2004 deportation to add 16 points to his total offense level did not violate *Apprendi*. This is because, to violate *Apprendi*, a prior unproven or unadmitted to deportation must increase a defendant's sentence beyond the prescribed statutory maximum. *Apprendi*, 530 U.S. 466, 490. Here, the Court sentenced Esparza-Salazar to 84 months (7 years) imprisonment, but his prescribed statutory maximum sentence under § 1326(a) and (b)(1) was 120 months (10 years) of imprisonment. *See* 8 U.S.C. § 1326(a) and (b)(1) (making it a crime, punishable up to 10 years of imprisonment, to reenter the U.S. after having been previously removed subsequent to a conviction for a felony). As explained above, Esparza-Salazar's Amended Indictment charged him with violating § 1326(a) and (b)(1) and he pleaded guilty to facts which form the basis of a § 1326(a) and (b)(1) violation. CR Dkt. No. 18 at 1; CR Dkt. No. 39 at 41-42. Specifically, he admitted that he had been found illegally in the U.S. on September 1, 2017, after having been previously removed on July 21, 2017, after having been convicted of a felony on August 5, 2013. *Id*.

Further, although his July 21, 2017 deportation was not proven to a jury, he admitted to the deportation while under oath during his rearraignment. CR Dkt. No. 39 at 41-42. Consequently, the Court did not err in relying upon Esparza-Salazar's July 21, 2017 deportation to convict and sentence him pursuant to § 1326(a) and (b)(1). *See United States v. Rojas-Luna*, 522 F.3d 502, 504–06 (finding that a prior removal can

be used to increase a defendant's sentence if it is admitted by the defendant); *States v. Ramirez*, 557 F.3d 200, 203–04 (same).

Esparza-Salazar's remaining claims that the Court erred in sentencing him concern the Court's calculation of his Guidelines range. First, he states that the Court improperly used a prior felony conviction to increase his sentence. Dkt. No. 22 at 4-5.

> One conviction was assessed as requiring a ten level enhancement based upon a prior felony which sustained a prison term of sixty months or more. However the guidelines require the investigation as to whether the sentence was actually served and what the underlying offense actually was. In this particular case Salazar only served a portion of that sentence which should have reduced the special assessment by at least two levels.

*Id.* (errors in original).

This claim lacks merit. As noted above, Esparza-Salazar's PSR assigned a special offense level enhancement of 10 points because: (1) prior to his first removal on August 11, 2004, he was convicted of controlled substance felony on December 3, 2001; and, (2) the sentence imposed for that felony was 60 months (five years) or more. CR Dkt. No. 20 at ¶ 17. This assignment was proper. *See* CR 22 at 6-8 (containing the December 3, 2001 sentencing hearing transcript documenting Esparza-Salazar's December 3, 2001 conviction for a controlled substance felony); U.S.S.G. § 2L1.2(b)(2)(A) (providing for a 10-point enhancement if a defendant sustains a felony conviction for an offense, other than an illegal reentry offense, with a sentence of five years or more, for conduct occurring before the defendant's first order of removal).

Additionally, although Esparza-Salazar was released prior to the expiration of his full term of imprisonment, his early release did not alter the application of § 2L1.2(b)(2)(A). According to the definitions applicable to § 2L1.2(b)(2)(A), the term "sentence imposed" is accorded "the meaning given [to] the term 'sentence of

imprisonment' in Application Note 2 and subsection (b) of § 4A1.2."  U.S.S.G. § 2L1.2, Application Note 2 ("Definitions").  Subsection (b)(1) of § 4A1.2 states: "[t]he term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed."  U.S.S.G. § 4A1.2(b)(1).  Subsection (b)(2) of § 4A1.2 states: "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended."  *Id.*, § 4A1.2(b)(2).  Finally, Application Note 2 of § 4A1.2 states that, to qualify as a "sentence of imprisonment," the defendant "must have actually served a period of imprisonment on such sentence[.]"  *Id.*, Application Note 2 ("Sentence of Imprisonment").  Here, the maximum sentence imposed was five years, the court did not impose a suspended sentence, and Esparza-Salazar "actually served" more than two years of that sentence.  *See* CR Dkt. No. 20 at ¶ 28; CR Dkt. No. 22 at 7-8 (requiring Esparza-Salazar to serve at least "two-thirds" of the five-year sentence).  Accordingly, in adopting the PSR without change and adding a special offense level enhancement of 10 points, the Court did not err.  *See* U.S.S.G. § 2L1.2(b)(2)(A).

Next, Esparza-Salazar contends that the Court improperly used two other prior convictions to increase his Guidelines range.  Dkt. No. 22 at 4 (stating that the Court used a total of "three separate prior convictions" to improperly increase his sentence).  He indicates that the Court used these two prior convictions to improperly add special offense level enhancement points to his total offense level.  *Id.*  Esparza-Salazar does not otherwise expand upon his claim or specify how the Court erred.

A review of his PSR reveals that the Court did not err.  As noted above, Esparza-Salazar's PSR assigned a special offense level enhancement of 4 points because he had committed his "instant offense" after sustaining two felony illegal reentry offenses on June 1, 2009, and August 5, 2013, respectively.  CR Dkt. No. 20 at ¶ 16.  This assignment

was proper.  *See* CR Dkt. No. 22 at 17 (containing Esparza-Salazar's August 5, 2013 judgment for being found in the U.S. after a previous deportation); *id*. at 23 (containing Esparza-Salazar's June 1, 2009 judgment for illegal reentry after deportation); U.S.S.G. § 2L1.2(b)(1)(A) (providing for a 4-point special offense enhancement if a defendant commits his "instant offense" after "sustaining a conviction for a felony that is an illegal reentry offense").

Additionally, the PSR assigned a special offense level enhancement of 6 points because: (a) after his first removal on August 11, 2004, he was convicted of a controlled substance felony for conduct occurring on April 3, 2007; and, (b) he was sentenced to "24 months of custody, to serve 16 months and remainder of [the] sentence suspended."  CR Dkt. No. 20 at ¶ 18 (emphasis added).  This assignment was also proper.  *See* CR Dkt. No. 22 at 15-16 (containing an order clarifying Esparza-Salazar's November 26, 2007 judgment for a third degree controlled substance crime); U.S.S.G. § 2L1.2(b)(3)(C) (providing for a 6-point special offense enhancement if, after the defendant is removed for the first time, he engages in conduct that results in a "conviction for a felony offense (other than an illegal reentry offense) for which the sentence imposed exceed[s] one year and one month[.]").  Thus, the Court did not err in adopting the PSR and using Esparza-Salazar's prior convictions to add special offense level enhancement points to his total offense level.  Esparza-Salazar's claims to the contrary are meritless and should be dismissed.

In his final sentencing-error claim, Esparza-Salazar asserts that the Court improperly used his prior offenses, including an offense with a suspended sentence, to increase his criminal history category.  He states that his opportunities under U.S.S.G.

§ 5K3.1 were reduced as a result.  Dkt. No. 22 at 3-5.[8]  Therefore, even though the Court sentenced him below the Guidelines, he contends that he still suffered prejudice due to the Court's miscalculations.  *Id.* at 4.

A review of Esparza-Salazar's PSR, which the Court adopted without change, reveals that:

1. The PSR correctly assessed 3 criminal history points for Esparza-Salazar's 1996 controlled substance conviction because he received a sentence exceeding one year and one month for that conviction.  *See* CR Dkt. No. 20 at ¶ 27; U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month."); U.S.S.G. § 4A1.2(k)(1) ("In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of imprisonment imposed upon revocation.  The resulting total is used to compute the criminal history points for § 4A1.1(a)[.]").

2. The PSR correctly assessed 3 criminal history points for Esparza-Salazar's 1997 controlled substance conviction because he received a sentence exceeding one year and one month for that conviction.  *See* CR Dkt. No. 20 at ¶ 28; U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month.").

3. The PSR correctly assessed 3 criminal history points for Esparza-Salazar's 2007 conviction for conspiracy to commit a controlled substance crime because he received a non-suspended sentence exceeding one year and one month for that conviction.  *See* CR Dkt. No. 20 at ¶ 29; U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month.").

4. The PSR correctly assessed 3 criminal history points for Esparza-Salazar's 2008 conviction for illegal reentry after deportation because he received a sentence exceeding one year and one month for that conviction.  *See* CR Dkt. No. 20 at ¶ 30; U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month."); U.S.S.G § 4A1.2(k)(1) ("In the case of a prior revocation of probation, parole, supervised release, special parole, or mandatory release, add the original term of imprisonment to any term of

---

[8]  Section 5K3.1 of the Guidelines provides that, "[u]pon motion of the Government, the court may depart downward not more than 4 levels pursuant to an early disposition program authorized by the Attorney General of the United States and the United States Attorney for the district in which the court resides."  U.S.S.G. § 5K3.1.

imprisonment imposed upon revocation.  The resulting total is used to compute the criminal history points for § 4A1.1(a)[.]").

5.  The PSR correctly assessed 3 criminal history points for Esparza-Salazar's 2013 conviction for being found in the U.S. after deportation because he received a sentence exceeding one year and one month for that conviction.  *See* CR Dkt. No. 20 at ¶ 31; U.S.S.G. § 4A1.1(a) ("Add 3 points for each prior sentence of imprisonment exceeding one year and one month.").

The PSR's assignment of criminal history points for each of the above-referenced five convictions was correct even though: (1) Esparza-Salazar was sometimes released early; and, (2) he once received a sentence which allowed him to serve only 16 months of a 24-month sentence in custody, with the "remainder of sentence suspended[.]  *See* CR Dkt. No. 20 at ¶ 29.  According to the definitions applicable to U.S.S.G. § 4A1.1(a), "the term '**sentence of imprisonment**' is defined at § 4A1.2(b)."  U.S.S.G. § 4A1.1(a), Application Note 1 (emphasis in original).  Section 4A1.2(b)(1) states: "[t]he term 'sentence of imprisonment' means a sentence of incarceration and refers to the maximum sentence imposed."  U.S.S.G. § 4A1.2(b)(1).  Section 4A1.2(b)(2) states: "[i]f part of a sentence of imprisonment was suspended, 'sentence of imprisonment' refers only to the portion that was not suspended."  *Id.*, § 4A1.2(b)(2).  Application Note 2 of § 4A1.2 states that, to qualify as a "sentence of imprisonment," the defendant "must have actually served a period of imprisonment on such sentence[.]"  *Id.*, Application Note 2.  Application Note 2 of § 4A1.2 also states that "criminal history points are based on the sentence pronounced, *not the length of time actually served*."  *Id.* (emphasis added).  Here, the maximum, non-suspended sentences imposed for each of Esparza-Salazar's five convictions exceeded one year and one month, and he actually served a period of imprisonment on each sentence.  Therefore, the Court correctly adopted the PSR's assessment of his criminal history points.  *See* U.S.S.G. § 4A1.1(a) and § 4A1.2(k)(1).

Adding together the criminal history points for each of the five convictions at issue, the PSR gave Esparza-Salazar a criminal history score of 15 points.  CR Dkt. No. 20 at ¶ 32.  Pursuant to the 2016 Edition of the U.S.S.G., Chapter 5, Part A, a criminal history score of 13 or more establishes a criminal history category of VI.  *See* U.S.S.G., Ch. 5, Part A, Sentencing Table (2016).  In adopting the PSR, then, the Court correctly assessed a total offense level of 25 (*see supra* at pgs. 13-18), a criminal history score of 15, and a criminal history category of VI.  CR Dkt. No. 20 at ¶¶ 25, 32, 82.  Based upon a total offense level of 25 and a criminal history category of VI, the Court correctly found that "the guideline range for imprisonment" was 110 to 137 months pursuant to "Zone D of the Sentencing Table, U.S.S.G. Chapter 5, Part A."  *Id*. at ¶ 82.  *See* CR Dkt. No. 35 at 1. U.S.S.G., Ch. 5, Part A, Sentencing Table (2016).[9]

Thus, the Court did not improperly use Esparza-Salazar's prior offenses to increase his criminal history category, or otherwise err in calculating his Guidelines range of imprisonment.  As Esparza-Salazar has not shown that the Court erred, he has not shown that the Court prevented him from taking advantage of U.S.S.G. § 5K3.1 or prejudiced him in any other way.  Esparza-Salazar's claims that the Court erred in sentencing him are without merit and should be dismissed.

**B. Esparza-Salazar's claim that the Court erred in failing to ensure that he understood his sentencing exposure and plea agreement.**  Esparza-Salazar states that, during the plea colloquy, the Court erred in failing to inform him that his prior convictions would increase his maximum statutory sentence under § 1326(a) and (b).

---

[9] Pursuant to U.S.S.G. § 5G1.1(c)(1), however, the maximum Guidelines imprisonment range was limited to "the statutorily authorized maximum term of 120 months of imprisonment."  CR Dkt. No. 20 at ¶ 82.

Dkt. No. 2 at 1-2.  The record does not support this claim.  During his rearraignment, the Court informed Esparza-Salazar that his prior felony convictions could result in a maximum term of imprisonment of 10 years.  CR Dkt. No. 39 at 21.  The Court also explained that it could impose a sentence more severe than his advisory Guidelines range of imprisonment.  *Id.* at 25-26.  Esparza-Salazar acknowledged that he understood both possibilities and chose to enter a cold guilty plea anyway.  *Id.* at 21, 25-26, 37-38, 40-42.

Esparza-Salazar next contends that, during the sentencing hearing prior to sentencing, the Court erred by failing to go over the terms of his plea agreement with him, including the terms of his waiver of appeal.  Dkt. No. 2 at 6-7.  He states that the Court compounded this error by failing to ask him whether the plea agreement had been interpreted for him or explained to him.  *Id.*  Aside from these assertions, he does not elaborate upon his claim or explain how the Court's alleged errors have prejudiced him.

The record shows that Esparza-Salazar did not enter into his plea agreement with the Government until after he had entered his cold guilty plea with the Court.  *See* CR Dkt. Nos. 28 and 39.  Consequently, the Court did not go over the terms of the plea agreement with Esparza-Salazar during his rearraignment.  Further, as the Government concedes (Dkt. No. 13 at 1), the Court did not go over the terms of the plea agreement with Esparza-Salazar during his sentencing hearing.  *See generally* CR Dkt. No. 36.

Nevertheless, Esparza-Salazar has not shown that he was prejudiced by the Court's alleged errors.  Esparza-Salazar's plea agreement did include a waiver which would have precluded him from bringing some of his claims on appeal and pursuant to a 28 U.S.C. § 2255 Motion, had the waiver been enforced.  *See* CR Dkt. No. 28 at 4-5.[10]  However, the

---

[10] The Government has not attempted to enforce to waiver contained in Esparza-Salazar's plea agreement in these proceedings.  *See generally* Dkt. No. 13.

Fifth Circuit and this Court have addressed his appellate and § 2255 claims on their merits.  *See* CR Dkt. No. 43 at 2.  Esparza-Salazar has not shown that the Court's alleged errors resulted in the waiver of his appellate and § 2255 rights.

Esparza-Salazar has additionally failed to show that he has been harmed by the Court's alleged errors in any other way.  As he acknowledges (Dkt. No. 22 at 4), the Court sentenced him below the Guidelines range applicable to him.  *See* CR Dkt. No. 20 at ¶ 82; CR Dkt. No. 35 at 1.  The Guidelines range applicable to him was 110 to 120 months of imprisonment, but the Court sentenced him to a lesser term of imprisonment of 84 months.  *Id.*  The transcript of Esparza-Salazar's sentencing hearing reveals that the Court agreed to sentence him to 84 months *because* he had entered into the plea agreement.  CR Dkt. No. 36 at 3-6.  Given that he had already entered a cold guilty plea knowing that the Court could sentence him up to 10 years in prison, Esparza-Salazar has failed to explain, much less show, how he was prejudiced by the Court's alleged errors.  CR Dkt. No. 39 at 21, 25-26, 37-38, 40-42.[11]

Esparza-Salazar's claims of Court error lack merit and should be dismissed.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 (5th Cir. 1983) ("absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se

---

[11] There is also some evidence in the record to suggest that Esparza-Salazar agreed to enter a cold guilty plea believing that his Guidelines range of imprisonment would be even higher than the range ultimately adopted by the Court.  During his rearraignment, Esparza-Salazar's counsel informed the Court, in Esparza-Salazar's presence, that Esparza-Salazar was concerned because he "was looking at a lot of time."  CR Dkt. No. 39 at 38.  Specifically, his counsel informed the Court that, due to Esparza-Salazar's prior convictions, he would likely have a total offense level of 30 and a criminal history category of "six."  *Id.*  Esparza-Salazar did end up with a criminal history category of "IV," but his total offense level was only 25.  CR Dkt. No. 20 at ¶¶ 25, 32, 82.  Yet, despite being informed that he faced a Guidelines range of imprisonment potentially more severe than the one ultimately adopted by the Court, Esparza-Salazar stated that he still wished to enter a guilty plea without a plea agreement.  CR Dkt. No. 39 at 38.

petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *Konci v. United States*, No. 4:09CR193(3), 2016 WL 409990, at *5–6 (E.D. Tex. Feb. 3, 2016) ("If a Movant challenges his guilty plea, there must be independent indicia of the likely merit of his contentions, and mere contradictions of his statements at the guilty plea will not carry his burden. *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987)").

**C. Esparza-Salazar's ineffective assistance of counsel claims**.  Esparza-Salazar argues that his attorney provided ineffective assistance by failing to object to all of the Court's alleged errors discussed above.  Dkt. No. 1 at 4-6; Dkt. No. 2 at 7-8; Dkt. No. 22 at 4-5.  He states that, had his counsel properly objected, he would have received a lower sentence.  Dkt. No. 22 at 5.  This argument fails because, as demonstrated above, the Court made no errors prejudicing Esparza-Salazar or causing him to receive a longer sentence.  Esparza-Salazar's claim that he would have received a lower sentence, but for his counsel's failure to object, is conclusory and contradicted by the record.  Accordingly, it should be dismissed.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 ("absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value").

Esparza-Salazar next claims that his counsel provided ineffective assistance by permitting him to enter a guilty plea without a plea agreement.  Dkt. No. 22 at 5.  During his rearraignment, however, he testified under oath that he was pleading guilty, knowingly, freely and voluntarily.  Specifically, he acknowledged that:

1. He had discussed his case and the charges against him with his counsel. His counsel had answered all of his questions and explained all of his

rights.  He was satisfied with counsel's representation.  CR Dkt. No. 39 at 12-13, 16-18.

2.  He understood that he could receive a maximum term of 10 years of imprisonment.  *Id*. at 21.

3.  He understood that he had the right to a jury trial and did not have to plead guilty.  *Id*. at 14-16.

4.  He was pleading guilty because he had come into the U.S. illegally and was guilty.  *Id*. at 18, 20, 40-42, 47-48.

5.  He was pleading guilty freely and voluntarily.  *Id*. at 41, 48.

Esparza-Salazar has alleged no facts to contradict these sworn statements.  His claim of ineffectiveness is, therefore, conclusory and subject to dismissal.  *See Ross v. Estelle*, 694 F.2d 1008, 1012 ("absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his pro se petition (in state and federal court), unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value"); *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998) ("[A] defendant ordinarily will not be heard to refute her testimony given at a plea hearing while under oath.  Solemn declarations in open court carry a strong presumption of verity, forming a formidable barrier in any subsequent collateral proceedings.") (internal citations and quotations omitted).

Moreover, to show prejudicial ineffective assistance in this context, a defendant must show that there was a reasonable probability that, but for his counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.  *Hill v. Lockhart*, 474 U.S. 52, 58-60.  Esparza-Salazar does not claim that a plea agreement was available to him at the time he entered his guilty plea; and, he does not allege facts indicating that the absence of an agreement was due to his counsel's actions or inaction.  He also alleges

no facts indicating that, but for his counsel's alleged failure to secure a plea agreement, he would not have insisted on going to trial and refused to plead guilty. Esparza-Salazar's claim fails to state a cognizable cause of action and should be dismissed. *Id*; *Cannon v. Dretke*, No. CIV.A. H-05-809, 2006 WL 270016, at *6 (S.D. Tex. Feb. 1, 2006) ("[Cannon] alleges no facts [indicating] that, but for the alleged failure of counsel to secure a plea, he would not have pleaded guilty and would have insisted on going to trial. His claim of ineffective assistance of counsel is conclusory . . . and fails to state a cognizable [claim].") (citations omitted).

Moving on, Esparza-Salazar makes the related claim that his counsel provided ineffective assistance by permitting him to enter into a "sham" plea agreement. Dkt. No. 22 at 5. He states that his counsel failed to investigate his prior offenses and determine whether the Government's sentencing recommendation to the Court would be "valid." Dkt. No. 6-7 at 3. He further contends that his counsel failed to explain the terms of the plea agreement with him, including the terms of his waiver of appeal. *Id*. at 6-7. As a result, he asserts that he did not knowingly or voluntarily enter into his plea agreement. *Id*. at 7; Dkt. No. 22 at 3-4.

Esparza-Salazar's assertions here fall short for two main reasons. First, as already addressed above, the Fifth Circuit and this Court have addressed his appellate and § 2255 claims on their merits. *See* CR Dkt. No. 43 at 2. Therefore, Esparza-Salazar has not shown that his counsel's alleged ineffectiveness resulted in the waiver of his appellate and § 2255 rights.

Second, even presuming that his counsel failed to explain the terms of the plea agreement or properly investigate his prior offenses, Esparza-Salazar has not shown that he was prejudiced by these alleged failures. This is because:

1. He had already entered a cold guilty plea.  CR Dkt. No. 39.

2. He entered his cold guilty plea knowing that he could receive a maximum term of 10 years of imprisonment.  *Id*. at 21.

3. He entered his cold guilty plea knowing that the Court could sentence him above the Guidelines range applicable to him.  *Id*. at 25-26.

4. He has alleged no facts indicating that his guilty plea was involuntary.

5. After accepting the plea agreement, the Court agreed to sentence him more than 2 years below the low end of the advisory Guidelines range of imprisonment applicable to him.  CR Dkt. No. 36 at 3-6.

6. He has alleged no facts indicating that he would have insisted on going to trial, but for his counsel's alleged ineffectiveness.

Put simply, the plea agreement helped rather than harmed Esparza-Salazar, and he has alleged no facts to the contrary.  Accordingly, for all of the foregoing reasons, Esparza-Salazar's claims lack merit and should be dismissed.

## V.  Certificate of Appealability

A certificate of appealability shall not issue unless the movant makes "a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  This requires a "showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 475 (2000) (internal quotations and citations omitted).  Said another way, where claims have been dismissed on the merits, the movant "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id*. at 484.  Where claims have been dismissed on procedural grounds, the movant/petitioner must show that "jurists of reason would find it debatable whether the

petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* District courts may deny certificates of appealability sua sponte, without requiring further briefing or argument. *Alexander v. Johnson*, 211 F.3d 895, 898 (5th Cir. 2000). A certificate of appealability should not issue in this case because Esparza-Salazar has not made a substantial showing of the denial of a constitutional right.

## VI. Recommendation

It is recommended that the Court: (1) **DENY** the relief requested in Esparza-Salazar's Motion and supporting submissions; (2) **DIRECT** the Clerk of Court to **CLOSE** this case; and (3) **DECLINE** to issue a certificate of appealability.

## VII. Notice to Parties

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Services Auto. Ass'n*, 79 F.3d 1415 (5th Cir. 1996).

**SIGNED** on this **21st** day of April, 2021, at Brownsville, Texas.

**Ignacio Torteya, III**
**United States Magistrate Judge**